PROB 12C
(Rev 2011)

# United States District Court
## for
## Middle District of Tennessee

## Superseding Petition for Summons for Offender Under Supervision
### [Supersedes Petition Filed as Docket Entry 63]

Name of Offender: Carlos L. Beard  Case Number: 3:09-00132

Name of Sentencing Judicial Officer: Honorable William J. Haynes, Jr., Senior U.S. District Judge

Name of Current Judicial Officer: Honorable Todd J. Campbell, U.S. District Judge

Date of Original Sentence: April 11, 2011

Original Offense: 18 U.S.C. § 922(g)(1) Convicted Felon in Possession of a Firearm

Original Sentence: 72 months' custody and three years' supervised release

Type of Supervision: Supervised release  Date Supervision Commenced: September 5, 2014

Assistant U.S. Attorney: Joe Montminy  Defense Attorney: Mariah Wooten

## PETITIONING THE COURT

__X__  To Consider Additional Violations/Information.
_____  To issue a Summons.

## THE COURT ORDERS:

☐ No Action
☒ The Consideration of Additional Violations/Information.
☐ The Issuance of a Warrant:
  ☐ Sealed Pending Warrant Execution
    (cc: U.S. Probation and U.S. Marshal only)
☐ The Issuance of a Summons.
☐ Other

I declare under penalty of perjury that the foregoing is true and correct. Respectfully submitted,

Considered this __2__ day of __Nov.__, 2015, and made a part of the records in the above case.

_Amanda Neddle_ (signature)

Amanda Michele
U.S. Probation Officer

_Todd Campbell_ (signature)
Todd J. Campbell
U.S. District Judge

Place   Nashville, TN

Date   November 2, 2015

## ALLEGED VIOLATIONS

The information provided in the previous petition, filed as docket entry 63, has been amended as follows:

<u>Violation No. 1</u> - has been updated to report two additional positive drug tests.

<u>Violation No. 3</u> - has been updated to report his failure to report for drug testing.

<u>Violation No. 5</u> - has been updated to report his continued failure to participate in substance abuse treatment, as recommended.

The probation officer believes that the offender has violated the following condition of supervision:

| Violation Number | Nature of Noncompliance |
| --- | --- |
| **1.** | **The defendant shall refrain from any unlawful use of a controlled substance.** |

Since beginning supervision in September 2014, Mr. Beard has tested positive for illegal drugs on **12** different occasions:

| | |
| --- | --- |
| September 16, 2014 | oxycodone |
| October 15, 2014 | oxycodone |
| December 1, 2014 | amphetamine |
| February 23, 2015 | oxycodone |
| May 26, 2015 | amphetamine |
| June 1, 2015 | amphetamine |
| September 10, 2015 | cocaine |
| September 23, 2015 | cocaine |
| September 28, 2015 | cocaine |
| October 4, 2015 | cocaine and buprenorphine |
| **October 13, 2015** | **cocaine** |
| **October 30, 2015** | **cocaine** |

Following his positive drug tests in September and October 2014, Mr. Beard was questioned by the probation officer regarding his illegal drug use. He admitted to taking Percocet and Roxicet pills from a "friend" after running out of his prescribed Hydrocone medication. Mr. Beard admitted he knew it was illegal but needed something to relieve his foot pain. He reported he made a mistake, but wanted to participate in substance abuse treatment and learn how not to rely on medications.

After testing positive for amphetamine in December 2014, Mr. Beard adamantly denied using the illegal drug, but reported taking Claritin-D for his cold symptoms a few days prior to the test. After receiving confirmation results from the testing laboratory, the probation officer further confirmed that the positive result for amphetamine was not from the use of Claritin-D.

Regarding his positive drug test for oxycodone on February 23, 2015, Mr. Beard admitted to buying two 10 milligram Percocet pills from a "friend" at a bowling alley in Nashville, Tennessee. He continued to blame his illegal drug use on his foot pain.

On June 1, 2015, the probation officer met with Mr. Beard to discuss his most recent positive drug test results. He reported he accidentally took his son's Adderall medication, thinking he was taking his own anti-seizure medication, Dilantin. Mr. Beard reported that he consumed upwards of 10 capsules of Adderall since May 24, 2015.

On July 6, 2015, Mr. Beard reported to the probation office at approximately 4:40 p.m., 20 minutes prior to the probation office closing, and was unable to produce enough urine for testing purposes. When questioned by the probation officer on July 7, 2015, he could provide no explanation as to why he would test positive for cocaine and denied using any illegal drugs or medications not prescribed to him. Mr. Beard was eventually able to produce enough urine to be sent to the testing laboratory for confirmation. The lab report confirmed his urine was negative for any illegal drugs.

On September 10, 2015, Mr. Beard reported to the probation office for a random drug test and tested positive for opiates, for which he has a prescription for Hydrocodone, and cocaine. He denied any illegal drug use and his urine was sent to the lab for confirmation. The lab report confirmed his urine was positive for cocaine.

On September 23, 2015, Mr. Beard tested positive, again, for cocaine. When questioned by the probation officer, he denied using the illegal drug, but stated he wanted to talk to his attorney about it instead. The lab report confirmed his urine was positive for cocaine.

When questioned on September 28, 2015, following his additional positive drug test for cocaine, Mr. Beard reluctantly admitted to using cocaine the prior week. He reported he used "a lot" of cocaine on September 22, 2015, but was not sure of the exact amount. Mr. Beard denied any new use since that date.
The lab report confirmed his urine was positive for cocaine.

During a home contact on October 4, 2015, the U.S. Probation Officer Amanda Michele informed Mr. Beard that a drug test would be conducted by U.S. Probation Officer Willie Bova and inquired if he would test positive for any illegal drugs and/or medications not prescribed to him. Mr. Beard reported he would not test positive. Just prior to the drug test, when U.S. Probation Officer Willie Bova asked Mr. Beard if he would test positive for any illegal drugs and/or medications not prescribed to him, he admitted to using cocaine. A drug test was conducted and Mr. Beard tested positive for cocaine and buprenorphine. When questioned, Mr. Beard admitted to using ½ gram of cocaine on or about October 1st or 2nd, purchased for approximately $20-30, "on the street." He further admitted to using "a piece" of a Subutex pill on the same evening.

**Mr. Beard tested positive for cocaine, again, on October 13, 2015, and October 30, 2015. When questioned by the probation officer, he denied using the illegal drug.**

2. **The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician.**

On May 19, 2015, Mr. Beard admitted to consuming four 7.5mg Hydrocodone pills, 30 minutes prior to reporting to the probation office.

When he initially arrived at the probation office, Mr. Beard reported he was involved in a car accident the day before and was taken by ambulance to the emergency room for treatment. He reported he had back pain and spasms. Mr. Beard stated he was given two different shots for the pain at the hospital, but did not know the names of the drugs. He reported he was given several prescriptions, one of which was Hydrocodone, and he picked up the prescription from his pharmacy the morning of May 19, 2015, prior to reporting to the probation office. Mr. Beard stated he took two pills after picking up his prescription. The probation officer reviewed the discharge paperwork Mr. Beard provided from the hospital and it did not indicate the quantity of Hydrocodone pills prescribed, only the instructions for use. The probation officer asked to see the bottle and Mr. Beard stated that the bottle was downstairs in the car. He was directed to obtain the bottle and when he returned to the office, the probation officer asked Mr. Beard to show her the quantity of the pills inside the bottle. The pharmacy label indicated he was prescribed 12 Hydrocodone pills. When Mr. Beard opened the bottle, he stated, "There are only seven pills in here right now, should be eight. One must have fallen out in the car and my girlfriend is bringing it up." The probation officer questioned Mr. Beard as to why there would only be eight pills in the bottle. According to his previous statement, he only took two pills this morning. Mr. Beard admitted to taking four pills, at one time, due to the pain from his back and foot. The dosage on the prescription label read: one pill, every four hours, as needed for pain.

**3.**     **The defendant shall submit to drug testing at the request of the probation officer.**

On June 29, 2015, Mr. Beard failed to report to the probation office for a random drug test.

On Sunday, June 28, 2015, the probation officer met with Mr. Beard at his residence for a random home contact. During that visit, the probation officer inquired if he had any illegal drugs or medications not prescribed to him in his system. Mr. Beard advised no and further stated that he did not have any current prescriptions or pills remaining from prior prescriptions. The probation officer instructed Mr. Beard to report to the probation office the next day June 29, 2015, for a random drug test.

**On October 29, 2015, Mr. Beard failed to report to the probation office for a random drug test. When questioned by the probation officer, Mr. Beard reported he knew he had a random drug test that day but did not report due to going to the hospital for a breathing treatment. Mr. Beard admitted he did not think to call the probation officer to inform her of his inability to report for his random drug test.**

**4.**     **The defendant shall answer truthfully all inquires by the probation officer and follow the instructions of the probation officer.**

On July 7, 2015, when questioned by the probation officer as to why he reported to the probation office 20 minutes prior to the probation office closing, Mr. Beard did not answer truthfully. He reported he was late due to leaving work at 4:00 p.m. and then going to pick up his children from summer camp. The probation officer contacted Mr. Beard's supervisor at Dyke Industries and was informed Mr. Beard

"clocked out" on July 6, 2015, at 2:59 p.m.

**5.**     <u>**The defendant shall participate in a program of substance abuse treatment which may include a 30-day inpatient substance abuse treatment program followed by up to 90 days in a community corrections center at the direction of the probation officer.**</u>

On September 23, 2015, Mr. Beard failed to attend and participate in treatment at Centerstone Mental Health. This was also one of the days he tested positive for cocaine.

When questioned by the probation officer as to why he did not attend his therapy session, Mr. Beard reported he simply forgot to go.

**On October 14, 2015, and October 28, 2015, Mr. Beard, again, failed to attend and participate in treatment at Centerstone Mental Health. When questioned, he reported he did not like Centerstone and didn't think he had to continue going, now that he was going to the Elam Center on November 13, 2015. Mr. Beard admitted he was never told, by either his therapist or the probation officer, to stop seeking outpatient treatment at Centerstone. He further commented that it was "his bad" for not going.**

<u>**Compliance with Supervision Conditions and Prior Interventions:**</u>
Carlos L. Beard is employed and lives with his girlfriend and children, in Nashville, Tennessee. Mr. Beard began his three-year term of supervised release on September 5, 2014, and is due to terminate supervision on September 4, 2017.

Following his release from incarceration, Mr. Beard reported he participated in several different substance abuse treatment programs and classes while incarcerated with the Bureau of Prisons, but the probation officer did not receive any aftercare treatment recommendations from the Bureau of Prisons, so no treatment referral was made.

A petition to request a modification of Mr. Beard's special conditions was submitted to the Court on October 20, 2014. The violation behavior reported in the petition included Mr. Beard testing positive for oxycodone without a valid prescription. The Court ordered the matter be heard at a hearing on October 31, 2014. On October 29, 2014, an agreed order to add the additional special condition for substance abuse treatment was approved by the Court.

On November 1, 2014, the probation officer referred Mr. Beard for a substance abuse assessment and treatment at Centerstone Mental Health. He participated in that assessment on November 10, 2014. His therapist recommended weekly outpatient group therapy as well as monthly individual therapy.

A report was submitted to the Court on December 15, 2014, regarding Mr. Beard's violation of testing positive for amphetamine. The probation officer re-instructed him to not use illegal drugs or medications not prescribed to him and warned him of the possible legal ramifications of his actions. The Court ordered no action on December 18, 2014.

A petition was submitted to the Court on March 2, 2015, regarding Mr. Beard's violations of testing positive for illegal drugs on four different occasions. The Court ordered the issuance of a summons on March 2, 2015, and Mr. Beard was ordered to appear at the U.S. Marshal's Office on or before March 16, 2015. Mr. Beard appeared on his summons on March 9, 2015, and was released to the same conditions of supervised release, pending his revocation hearing.

On April 8, 2015, defense counsel filed an unopposed motion requesting a 90-day continuance of Mr. Beard's revocation hearing set for April 10, 2015. The basis of the continuance was to allow him time to demonstrate that he could return to compliance with the conditions of his supervised release. The Court granted the requested continuance and Mr. Beard's revocation hearing was rescheduled for July 13, 2015.

Following this violation behavior, the probation officer met with Mr. Beard to discuss the medical and legal ramifications of abusing his prescription medications. At that time, he was encouraged to consider participating in inpatient substance abuse treatment. Mr. Beard was reluctant, stating he did not have a problem with prescription medications, but was just in a lot of pain. The probation officer directed him to make contact with his attorney to discuss the matter further, prior to his revocation hearing.

Superseding petitions were submitted to the Court on May 22, 2015, and June 3, 2015, regarding Mr. Beard's abuse of his prescription medications and testing positive for amphetamines. The Court ordered the consideration of additional violations/information on May 27, 2015, and June 4, 2015.

At his revocation hearing on July 13, 2015, defense counsel requested a continuance of 60 days. This request was granted with the understanding that counsel would submit an agreed order regarding a specific date for the hearing. Mr. Beard's case was re-assigned to Your Honor on September 1, 2015, and his revocation hearing was set for September 23, 2015.

**Mr. Beard participates, infrequently, in group substance abuse treatment, at Centerstone Mental Health.** He reports medical issues with his foot and has been encouraged by the probation officer to seek medical advise and medications from his doctor, rather than buy illegal drugs "on the street." Mr. Beard was also directed to take his medications as prescribed by his physician, not how he wants to take them.

A superseding petition was submitted to the Court on September 17, 2015, regarding Mr. Beard's positive drug test for cocaine on September 10, 2015. Your Honor ordered the consideration of the additional violation/information on September 17, 2015. Defense counsel filed a motion on September 22, 2015, requesting a 14-day continuance of his revocation hearing, set for September 23, 2015. Your Honor granted this motion and set Mr. Beard's revocation hearing for October 19, 2015.

**A superseding petition was submitted to the Court on October 5, 2015, regarding Mr. Beard's continued illegal drug use and his failure to participate in substance abuse treatment. Your Honor ordered the consideration of the additional violations/information on October 5, 2015. Defense counsel filed a motion on October 15, 2014, requesting a continuance of his revocation hearing in order to allow Mr. Beard time to enter, and successfully complete, inpatient substance abuse treatment. Your Honor granted this motion on October 16, 2015, and set his revocation hearing for January 29, 2016.**

Due to his continued drug use, the probation officer has repeatedly encouraged Mr. Beard to enter, and successfully complete, inpatient substance abuse treatment. He has expressed his concerns with losing his employment and has been unwilling to attend inpatient treatment. Following his most recent illegal drug use for cocaine, Mr. Beard was encouraged, again, to seek out inpatient substance abuse treatment. He was also strongly encouraged to contact his defense attorney and notify her of his continued noncompliance.

**Mr. Beard participated in an inpatient substance abuse treatment assessment at the Elam Center, in Nashville, Tennessee, on October 14, 2015. He was given an admission date of November 13, 2015, to their 28-day inpatient treatment program. Mr. Beard's reports that he is an addict, but denies any illegal drug use.**

**Update of Offender Characteristics:**
There is no additional information relevant to this section that has not already been provided in this petition.

**U.S. Probation Officer Recommendation:**
**It is respectfully recommended that these additional violations be considered at a revocation hearing to be held before Your Honor on January 29, 2016.** Assistant U.S. Attorney Joe Montminy has been advised of the offender's noncompliance and concurs with the recommendation.


Approved: _____
　　　　　　　Britton Shelton
　　　　　　　Supervisory U.S. Probation Officer

## SENTENCING RECOMMENDATION
### UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE
### UNITED STATES V. CARLOS L. BEARD, CASE NO. 3:00-00132

**GRADE OF VIOLATION:**      C  
**CRIMINAL HISTORY:**      V

**ORIGINAL OFFENSE DATE:**     POST APRIL 30, 2003     PROTECT ACT PROVISIONS

| | Statutory Provisions | Guideline Provisions | Recommended Sentence |
|---|---|---|---|
| CUSTODY: | 2 years (Class C Felony) 18 U.S.C. § 3583(e)(3) | 7-13 months U.S.S.G. § 7B1.4(a) | No recommendation |
| SUPERVISED RELEASE: | 3 years less any term of imprisonment 18 U.S.C. § 3583(h) | 1-3 years U.S.S.G. § 5D1.2(a)(2) | No recommendation |

18 U.S.C. § 3583(g)(4) If the defendant, as a part of drug testing, tests positive for illegal controlled substances more than three times over the course of one year; the Court shall revoke the term of supervised release and require the defendant to serve a term of imprisonment not to exceed the maximum term of imprisonment authorized under subsection (e)(3).

18 U.S.C. § 3583(e)(3) The Court may revoke a term of supervised release and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post release supervision, if the Court finds by a preponderance of the evidence that the offender violated a condition of supervised release. When a term of supervised release is revoked and the defendant is required to serve a term of imprisonment that is less than the maximum term of imprisonment authorized under subsection (e)(3), the Court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release, in accordance with 18 U.S.C. § 3583(h).

**Guideline Policy Statements:** Upon a finding of a Grade C violation, the Court may (A) revoke probation or supervised release; or (B) extend the term of probation or supervised release and/or modify the conditions of supervision. U.S.S.G. § 7B1.3(a)(2).

Respectfully Submitted,                  Approved:

_____         _____  
Amanda Michele                          Britton Shelton  
U.S. Probation Officer            Supervisory U.S. Probation Officer

# VIOLATION WORKSHEET

1. **Defendant** Carlos L Beard

2. **Docket Number** *(Year-Sequence-Defendant No.)* 0650 3:09CR00132 - 1

3. **District/Office** Middle District of Tennessee - Nashville

4. **Original Sentence Date** 4 / 11 / 2011
                                  month   day   year

5. **Original District/Office** _____
   *(if different than above)*

6. **Original Docket Number** *(Year-Sequence-Defendant No.)* _____

7. **List each violation and determine the applicable grade (see §7B1.1):**

   | Violation(s) | Grade |
   |---|---|
   | Shall refrain from any unlawful use of a controlled substance. | C |
   | Shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician. | C |
   | Shall submit to drug testing at the request of the probation officer. | C |
   | Shall answer truthfully all inquires by the probation officer and follow the instructions of the probation officer. | C |
   | Shall participate in substance abuse treatment as directed. | C |

8. **Most Serious Grade of Violation** *(see §7B1.1(b))*    [ C ]

9. **Criminal History Category** *(see §7B1.4(a))*    [ V ]

10. **Range of Imprisonment** *(see §7B1.4(a))*    [ 7 - 13 ] months

11. **Sentencing Options for Grade B and C Violations Only** *(Check the appropriate box):*

    ☐ (a) If the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is at least one month but not more than six months, §7B1.3(c)(1) provides sentencing options to imprisonment.

    ☒ (b) If the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is more than six months but not more than ten months, §7B1.3(c)(2) provides sentencing options to imprisonment.

    ☐ (c) If the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is more than ten months, no sentencing options to imprisonment are available.

Mail documents to: United States Sentencing Commission
Ste 2-500, South Lobby, One Columbus Cir, NE
Washington, DC 20002-8002

**Defendant** Carlos L Beard

12. **Unsatisfied Conditions of Original Sentence**

   List any restitution, fine, community confinement, home detention. or intermittent confinement previously imposed in connection with the sentence for which revocation is ordered that remains unpaid or unserved at the time of revocation (see §7B1.3(d)):

   Restitution($) _____   Community Confinement _____

   Fine($)      _____   Home Detention         _____

   Other        _____   Intermittent Confinement _____

13. **Supervised Release**

   If probation is to be revoked, determine the length, if any, of the term of supervised release according to the provisions of §§5D1.1-1.3 (see §§7B1.3(g)(1)).

   Term: _____ to _____ years

   If supervised release is revoked and the term of imprisonment imposed is less than the maximum term of imprisonment imposable upon revocation, the defendant may, to the extent permitted by law, be ordered to recommence supervised release upon release from imprisonment (see 18 U.S.C. §3583(e) and §7B1.3(g)(2)).

   Period of supervised release to be served following release from _____
   imprisonment:

14. **Departure**

   List aggravating and mitigating factors that may warrant a sentence outside the applicable range of Imprisonment:

15. **Official Detention Adjustment** (see §7B1.3(e)): _____ months _____ days

Mail documents to: United States Sentencing Commission
Ste 2-500, South Lobby, One Columbus Cir, NE
Washington, DC 20002-8002